# UNITED STATES DISTRICT COURT
## District of Kansas

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      **v.**              **CASE NO. 23-MJ-8247-01-ADM**

**OLEG CHISTYAKOV**
    **a.k.a. OLEGS ČISTJAKOVS,**

      **Defendant.**

## CRIMINAL COMPLAINT

I, Brian Douglas Newbury, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief, and establishes probable cause that the following offenses have been committed.

### COUNT 1

**18 U.S.C. § 371**
**(Conspiracy to Commit Offenses Against the United States)**

Between at least in or about November 2020, and continuing through in or about March 2023, in the District of Kansas and elsewhere, the defendant,

**OLEG CHISTYAKOV**

**a.k.a. OLEGS ČISTJAKOVS,**

knowingly and willfully conspired and agreed with Cyril Gregory Buyanovsky, Douglas Edward Robertson, and others, to commit offenses against the United States, that is:

      a.      to knowingly fail to file and submit false and misleading export information through the Electronic Export Information (EEI) and the Automated Export System (AES), and cause the same, in violation of Title 13, United States Code, Section 305, and Title 15, Code of Federal Regulations, Section 30.71; and

      b.      to fraudulently and knowingly export and send and attempt to export and send from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States, in violation of Title 18, United States Code, Section 554.

Paragraphs 2 through 84 below, are incorporated as though fully set out herein, which includes overt acts in furtherance of the conspiracy.  As additional overt acts, the allegations set forth in Counts 2 through 5 below, are incorporated as though fully set forth at this point.

All in violation of Title 18, United States Code, Section 371.

//

//

//

## COUNTS 2-5

### 18 U.S.C. §§ 554 and 2
### (Smuggling Goods from the United States)

On or about the dates listed for each count in the table below, in the District of Kansas and elsewhere, the defendant,

### OLEG CHISTYAKOV
### a.k.a. OLEGS ČISTJAKOVS,

fraudulently and knowingly exported and sent and attempted to export and send from the United States the merchandise, articles, and objects identified in each count, contrary to the laws and regulations of the United States, to wit, Title 50, United States Code, Section 4819; Title 15, Code of Federal Regulations, Section 764.2; Title 13, United States Code, Section 305; and Title 15, Code of Federal Regulations, Section 30.71, and fraudulently and knowingly received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for export contrary to such laws and regulations of the United States:

| Count | Approximate Date of Export | Exported Items |
|-------|---------------------------|----------------|
| 2 | February 26, 2021 | TPU-67A TCAS computer processor; ART-2100 radar sensor |
| 3 | April 1, 2021 | TPU-67B TCAS computer processor; MST-67A transponder; two IVA-81D TCAS speed indicators; PS-578 transponder; and ANT-67A antenna |
| 4 | October 11, 2022 | Two KN-62A distance-measuring equipment unit installation kits; two KT-76C transponders; and two KT-76C installation kits |

| 5 | December 14, 2022 | One KN-62A distance-measuring equipment unit |
|---|---|---|

each in violation of Title 18, United States Code, Sections 554 and 2.

At all times material to this Complaint:

## **BACKGROUND**

1.      I am a Special Agent with the Federal Bureau of Investigation and have

been since March 2020.  I am currently assigned to the Kansas City Division with a focus

on national security related matters, which includes matters involving violations of export

control laws.  This Complaint is based on the following facts known to me as a result of

my personal participation in this investigation, and from reports made to me by other law

enforcement agents or officers.  The investigation included search warrants executed on

multiple email accounts, search warrants executed at a business and residences in Kansas

that included the seizure and search of multiple electronic devices, interviews of

witnesses, the collection of financial institution records, and the collection of shipping

records.  The purpose of this affidavit is to show that probable cause supports this

Complaint, and therefore, it does not set forth all of my knowledge about this matter or

all information gleaned from this investigation.

2.      Since at least November 2020 until at least March 2023, OLEG

CHISTYAKOV a.k.a. OLEGS ČISTJAKOVS, the defendant, conspired with Cyril

Gregory Buyanovsky and Douglas Edward Robertson[1] to circumvent and evade U.S.

---

[1] A grand jury in Kansas returned an indictment in March 2023 in D. Kan. No. 23-20010-DDC charging Cyril Gregory Buyanovsky and Douglas Edward Robertson with various offenses related to their participation in this

4

export laws in order to sell, repair, and ship from the United States sophisticated avionics equipment to customers in Russia and around the world that operate Russian-built aircraft.[2]

3.      In the course of exporting avionics equipment from the United States through their company, KanRus Trading Company Inc. ("KanRus"), which is located in Kansas, Buyanovsky and Robertson, along with CHISTYAKOV, repeatedly concealed and misstated the true end users, value, and end destinations of exports by creating false invoices; submitting false information on export documents; failing to file required export documents; transshipping items through third-party countries, such as Germany and the United Arab Emirates ("UAE"); and exporting items to intermediary companies that then reexported the items to the ultimate end destinations.

4.      After the Russian Federation's unprovoked invasion of Ukraine on February 24, 2022, and the imposition of additional restrictions on the export of avionics from the United States to Russia, CHISTYAKOV, Buyanovsky, and Robertson, continued to export avionics to Russia despite knowing that such exports required a license from the U.S. Department of Commerce, which they neither sought nor obtained.

<u>Individuals and Companies</u>

5.      The defendant OLEG CHISTYAKOV a.k.a. OLEGS ČISTJAKOVS is a citizen of Latvia and resides there, but frequently travels to the UAE.  As part of the

---

criminal activity.  In October 2023, the grand jury returned a superseding indictment in the same case adding more charges.

[2] Avionics are the electronics installed in aircraft and can include communications, navigation, flight control, and threat detection systems.

conspiracy, CHISTYAKOV negotiated and processed orders from Russian Company-3 and Russian Company-4 for KanRus, Buyanovsky, and Robertson.  Search warrants were executed on email accounts attributable to CHISTYAKOV.

6.      Buyanovsky was the president and owner of KanRus.  Buyanovsky previously worked at an avionics manufacturer as an engineer.  Search warrants were executed at Buyanovsky's residence and on email accounts attributable to him.

7.      Robertson was a commercial pilot and operated KanRus with Buyanovsky. Search warrants were executed at Robertson's residence and on email accounts attributable to him.

8.      KanRus was registered in Kansas and supplied Western avionics equipment, including U.S.-origin equipment, and repair services for Russian-manufactured aircraft.  A search warrant was executed at the business premises for KanRus.

9.      "Russian Company-3" was located in Moscow, Russia and was a Russian aircraft maintenance, repair, and overhaul company.

10.     "Russian Company-4" was located in Moscow, Russia and was a Russian aircraft parts distributor.

11.     "UAE Company-1" was located in Ajman, UAE and was a trading company that sent KanRus funds on behalf of Russian Company-3.

12.     "Kazakh Company-1" was located in Almaty, Kazakhstan and was a logistics company that sent KanRus funds on behalf of Russian Company-4.

13.   "Kyrgyz Company-1" was located in Bishkek, Kyrgyzstan and sent KanRus funds on behalf of Russian Company-4.

14.   "UAE Company-2" was located in Sharjah, UAE and was an aircraft parts supplier that Russian Company-4 used to receive avionics equipment from KanRus in the United States.

15.   "UAE Company-3" was located in Sharjah, UAE and was an aircraft leasing and services company that Russian Company-4 used to receive avionics equipment.

16.   "German Company-1" was located in Schöneck, Germany and was a logistics company that Russian Company-3 used to send and receive avionics equipment to and from KanRus in the United States.

17.   "Laotian Company-1" was located in Vientiane, Laos and was a company that Russian Company-4 used to receive avionics equipment exported from the United States.

<u>The Statutory and Regulatory Background</u>

**The Export Control Reform Act and Export Administration Regulations**

18.   The Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Sections 730-774, were promulgated by the United States Department of Commerce, Bureau of Industry and Security ("BIS") to regulate the export of goods, technology, and software from the United States.  Under the Export Control Reform Act ("ECRA"), it was a crime to violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to the statute,

including the EAR, according to Title 50, United States Code, Section 4819(b). Willful violations of the EAR constituted criminal offenses under the ECRA, as provided in Title 50, United States Code, Section 4819(b).

19.     Through the EAR, BIS reviewed and controlled the export of certain items from the United States to foreign countries in accord with Title 15, Code of Federal Regulations, Sections 734.2-3. In particular, BIS placed restrictions on the export and reexport of items that it determined could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user, and the end use of the item.

20.     The most sensitive items subject to the EAR controls were identified on the Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, Section 774, Supplement Number 1. Items listed on the CCL were categorized by an Export Control Classification Number ("ECCN"), each of which was subject to export control requirements depending on destination, end use, and end user of the item.

21.     On February 24, 2022, in response to the Russian Federation's unprovoked invasion of Ukraine, the U.S. Department of Commerce imposed new license requirements on exports and reexports to Russia. As of February 24, 2022, any item classified under any ECCN in Categories 3 through 9 of the CCL required a license to be exported to Russia. *See* Volume 87, Federal Register, Page 12226 (published Mar. 3, 2022).

## The Commerce Control List Items

22.     A Traffic Alert and Collision Avoidance System ("TCAS"), or airborne collision avoidance system, is a family of airborne devices that function independently of the ground-based air traffic control system and provide collision avoidance protection for a broad spectrum of aircraft types.  A TCAS is composed of many components, including a computer processor unit, transponders, control and display panels, and antennas.

23.     During the relevant period, certain components of a TCAS were on the CCL and classified by BIS under ECCN 7A994 (other navigation direction finding equipment, airborne communication equipment, all aircraft inertial navigation systems not controlled under 7A003 or 7A103, and other avionic equipment, including "parts" and "components").

24.     During the relevant time period, the Honeywell BendixKing KN-62A distance-measuring equipment unit and installation kit, and the Honeywell BendixKing KT-76C transponder and installation kit avionics were on the CCL and classified by BIS under ECCN 7A994 (navigation/communication systems).  As of February 24, 2022, an export license was required from the Department of Commerce to export these avionics to Russia.

## Export and Shipping Records

25.     Pursuant to U.S. law and regulations, exporters or their authorized agents, such as shippers or freight forwarders, are required to file certain forms and declarations concerning the export of goods and technology from the United States.  Typically, those documents are filed electronically through the Automated Export System ("AES"), which

is administered by the U.S. Department of Homeland Security, Customs and Border Protection ("CBP").

26.     The Electronic Export Information ("EEI") (formerly known as the Shipper's Export Declaration ("SED")) is the required documentation submitted to the U.S. Government through the AES in connection with an export shipment from the United States.  Exporters or their authorized agents are required to file an accurate and truthful EEI for every export of goods from the United States with a value of $2,500 or more.  An EEI also is required, regardless of the value of the goods, if the goods require an export license.  Title 15, Code of Federal Regulations, Sections 758.1 and 30.2

27.     A material part of the EEI and AES, as well as other export filings, is information concerning the end user and ultimate destination of the export.  The identity of the end user may determine whether the goods: (a) may be exported without any specific authorization or license from the U.S. Government; (b) may be exported with the specific authorization or license from the U.S. Government; or (c) may not be exported from the United States.

28.     As of June 29, 2020, all exports to Russia of items on the CCL, regardless of value and whether a license was required to export, required an EEI filing.  Title 15, Code of Federal Regulations, Section 758.1(b)(10).  The purpose of these requirements is to strengthen the U.S. Government's ability to prevent the export of certain items to unauthorized destinations and end users because the EEI and AES aid in targeting, identifying, and, when necessary, confiscating suspicious or illegal shipments before exportation.  Title 15, Code of Federal Regulations, Section 30.1(b).

10

## THE SMUGGLING SCHEME

29.     Between at least in or about November 2020, and continuing through in or about March 2023, the exact dates being unknown, in the District of Kansas and elsewhere, defendant OLEG CHISTYAKOV a.k.a. OLEGS ČISTJAKOVS and others, including Buyanovsky and Robertson, fraudulently and knowingly exported and sent from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States.

### Objects of the Scheme

30.     The objects of the scheme were:

a.     to acquire avionics equipment that was manufactured and sold in the United States on behalf of entities that operated Russian-built aircraft in Russia and other countries;

b.     to repair and recertify in the United States avionics equipment that was used in Russian-built aircraft located and operated outside of the United States;

c.     to export avionics equipment from the United States directly and indirectly, to Russia and Russian end users located in other countries;

d.      to conceal the prohibited activities and transactions from detection by the U.S. Government so as to avoid penalties and disruption of the illegal activities;

e.      to profit through these illegal activities; and

f.      to evade the prohibitions and licensing requirements of the ECRA and EAR.

<u>Manner and Means of the Scheme</u>

31.    Defendant CHISTYAKOV and others, including Buyanovsky and Robertson, used the following manner and means, among others, to accomplish the objects of the scheme.

a.      Defendant CHISTYAKOV used email and other means to communicate with Buyanovsky and Robertson;

b.      Defendant CHISTYAKOV solicited quotes from and negotiated with Buyanovsky and Robertson for the purchase and repair of U.S. avionics equipment for Russian customers and customers that operated Russian-built aircraft;

c.      Buyanovsky and Robertson purchased items from companies in the United States to fulfill orders from defendant CHISTYAKOV, including by providing false information to the U.S. companies;

d.      Defendant CHISTYAKOV used coded language in email communications with Buyanovsky and Robertson to conceal the illegal conduct;

e.      Defendant CHISTYAKOV, Buyanovsky, Robertson, and others arranged for shipment of the U.S. goods from the United States to transshipment points in foreign countries, including Germany and the UAE, to conceal the true end users and end destinations;

f.      Defendant CHISTYAKOV, Buyanovsky, and Robertson falsified export and shipping records regarding shipments from the United States, including by providing false and misleading information to the shippers and freight forwarders, to conceal the true value of the goods, the ultimate destination of the goods, and the ultimate end user of the goods; and

g.      Defendant CHISTYAKOV, Buyanovsky, and Robertson caused the U.S. goods to be exported from the United States to individuals and entities in Russia without obtaining the required licenses from the U.S. Department of Commerce.

<u>Acts in Furtherance of the Scheme</u>

32.     In furtherance of the scheme and to achieve the objects thereof, defendant CHISTYAKOV and others committed and caused to be committed the following acts, among others, in the District of Kansas and elsewhere.

**February 26, 2021 FSB Export to Russian Company-3 in Russia**

33.     On or about November 11, 2020, defendant CHISTYAKOV on behalf of Russian Company-3 emailed Robertson a list of avionics equipment for KanRus to repair in the United States, along with a shipping label that showed the equipment being shipped from German Company-1 to KanRus.  Defendant CHISTYAKOV also sent

13

Robertson a proforma customs invoice that valued the equipment at $380 and listed the shipper as a UAE company that had the same name as Russian Company-3.[3]

34.     On or about November 20, 2020, Robertson emailed defendant CHISTYAKOV and described the specific pieces of avionics equipment that he had received from defendant CHISTYAKOV.  One of the pieces of equipment was a TCAS computer processor called a TPU.  Regarding the TPU, Robertson wrote, "TPU has a ФСБ [i.e., FSB] sticker on it!!!"  In response, defendant CHISTYAKOV wrote, "Interesting about sticker, you can remove and after stick on back?"  From my experience and training, I know that "FSB" is the acronym for the Federal Security Service of the Russian Federation, which is the principal intelligence and security agency of the Russian government.

35.     On or about January 27, 2021, Robertson emailed defendant CHISTYAKOV an invoice for the repairs with a total value of $28,769.  The invoice listed German Company-1 as the recipient company and UAE Company-1 as the payor company.

36.     On or about February 9, 2021, UAE Company-1 made a payment from a foreign bank account to KanRus's U.S. bank account for this export.

---

[3] In 2013, a U.S. Department of Commerce Export Control Officer conducted a post-shipment verification with an employee of a UAE company with the same name as Russian Company-3.  The employee explained that this UAE company started its operations in Sharjah in 2005, but all transactions are handled directly from Russian Company-3.  The employee reported that none of the commodities had ever come to this UAE company, but were sent directly to Russian Company-3.  In a prior post-shipment verification by a Commerce Export Control Officer with Russian Company-3 in 2012, the general director of Russian Company-3 explained that Russian Company-3 is broken up into four divisions located at the major Russian airports for production, sales and administration, repair and maintenance, and handling.  The general director reported that Russian Company-3 had an office in the UAE that provides maintenance to Russian planes.  During the post-shipment verification, Russian Company-3 reported that the commodities subject to that check in 2012 were incorporated into three new airplanes, one of which was to be used by the Russian Federal Security Service (FSB).

37.     The next day, on or about February 10, 2021, defendant CHISTYAKOV emailed Robertson a proposed "shipping" invoice that undervalued the repaired goods at $3,645.

38.     On or about February 25, 2021, Robertson asked defendant CHISTYAKOV, "can I change value to less than $2500? Less paperwork for me."  Later that day, defendant CHISTYAKOV reduced the value on the invoice to below $2,500 per Robertson's request.

39.     On or about February 26, 2021, Robertson exported some of the repaired avionics equipment to German Company-1, specifically the TPU processor and a radar sensor.

40.     On or about February 26, 2021, Robertson sent defendant CHISTYAKOV a copy of the shipping label and invoice that undervalued the equipment at $2,275.

41.     On or about February 26, 2021, Robertson caused the shipper to fail to file an EEI in connection with this export.

**April 1, 2021 Export to Russian Company-3 via Germany**

42.     On or about January 20, 2021, defendant CHISTYAKOV emailed Robertson requesting a quote for multiple avionics components, including a TPU processor, antennas, and transponders.  Robertson provided a quote and asked, "When is [Russian Company-3] wanting to pay?"

43.     On or about January 27, 2021, Robertson emailed defendant CHISTYAKOV a stamped invoice for the shipment valuing the goods at $159,625.  As

with the February 26, 2021 export, UAE Company-1 was listed as the payor company and German Company-1 was listed as the recipient company.

44.     On or about February 8, 2021, UAE Company-1 sent $159,625 to KanRus's U.S. bank account from a foreign bank account. Later that day, Buyanovsky emailed Robertson and told him that the order was "fully funded to the tune of 159625 this morning."

45.     On or about February 9, 2021, Robertson and Buyanovsky proceeded to purchase the avionics equipment from U.S. companies.

46.     On or about March 29, 2021, Robertson emailed a freight forwarder an invoice for this shipment that listed the value of the goods as $6,118 and the recipient as Germany Company-1. Robertson attached a Shipper's Letter of Instructions that identified German Company-1 as the ultimate consignee and incorrectly listed the ECCN for the components as EAR99.

47.     On or about April 1, 2021, Robertson caused the avionics equipment to be exported.

48.     On or about March 30, 2021, Robertson caused the shipper to file a false and misleading EEI that listed the value of the export as $6,118 and the ultimate consignee as Germany Company-1 when, in fact, the avionics shipment was valued at $159,625 and was destined for Russian Company-3.

### April 29, 2022 Export to Laotian Company-1 for Russian Company-4

49.     On or about January 27, 2022, defendant CHISTYAKOV sent Robertson an invoice to purchase two Honeywell BendixKing KT-74 transponders, two Honeywell

16

BendixKing KN-53 navigation receivers, and two Honeywell BendixKing KN-53 installation kits and export them to Russian Company-4 in Russia for $27,806.

50.     On or about January 31, 2022, Russian Company-4 made a payment from its Russian bank account to KanRus's U.S. bank account for this export.

51.     On or about March 8, 2022, after Russia's invasion of Ukraine, the U.S. Government's imposition of additional restrictions on exports and reexports to Russia, and the U.S. Government's detention of KanRus's attempted export to a different Russian company, Robertson emailed Buyanovsky.  Robertson attached a proposed letter to send to defendant CHISTYAKOV, which described the current options for continuing their smuggling scheme without being detected by the U.S. Government as either shipping within the U.S. or shipping to a company in a neutral country that was not a logistics company and did not have ties to Russia.

52.     On or about March 8, 2022, Robertson emailed the letter titled, "oleg_ship," as described in the preceding paragraph, to defendant CHISTYAKOV.

53.     After on or about March 8, 2022, Robertson and defendant CHISTYAKOV exchanged emails discussing possible shipping options, including whether specific companies in the UAE or Laos, including Laotian Company-1, would be acceptable recipients that would avoid U.S. Government scrutiny.

54.     On or about March 30, 2022, defendant CHISTYAKOV sent Robertson an email that stated that Russian Company-4 wanted to ship the avionics equipment directly to Laotian Company-1.

55.     On or about April 27, 2022, Robertson exchanged emails with defendant CHISTYAKOV in which he stated, among other things, that "things are complicated in USA," and that the invoice amount needed to be less than $50,000 because, otherwise, there would be "more paperwork and visibility" and "This is NOT the right time for either."

56.     On or about April 28, 2022, defendant CHISTYAKOV sent Robertson a revised invoice with a reduced value.  Robertson responded, "I think this is OK.  I will try and ship tomorrow."

57.     On or about April 29, 2022, Robertson caused the avionics equipment to be exported via Federal Express (FedEx) to Laotian Company-1.

58.     According to business records provided by FedEx, between on or about April 30, 2022 and the end of May 2022, multiple IP addresses accessed FedEx's website to track the progress of the package.  According to an IP address geolocation tool, the approximate location of those IP addresses was around Moscow, Russia, which also is where Russian Company-4 is located.  In particular, on or about May 12, 2022, the IP address 77.50.243.190 accessed FedEx's website to track the progress of the package. According to an IP address geolocation tool, the approximate location of IP address 77.50.243.190 is Moscow, Russia.

**October 11, 2022 Export to Russian Company-4 via the UAE**

59.     On or about August 19, 2022, defendant CHISTYAKOV emailed Robertson a draft invoice for an order of two BendixKing KN-62A distance-measuring equipment unit installation kits and two BendixKing KT-76C transponders and

18

installation kits. The invoice listed Kazakh Company-1 as the payor and Laotian Company-1 as the recipient. Defendant CHISTYAKOV also attached to the email a ledger titled, "oleg-August-2022-[Russian Company-4]," which reflected Russian Company-4's outstanding orders with KanRus. Later that day, Robertson emailed defendant CHISTYAKOV back a copy of the invoice containing KanRus's official corporate stamp.

60.     On or about August 23, 2022, defendant CHISTYAKOV emailed Robertson and told him that Russian Company-4 was sending the payment for this shipment through a company in Kazakhstan.

61.     During this time in August 2022, the website for Russian Company-4 identified partner airlines and aviation companies. Four of those partners were specifically included on BIS's "Denied Persons List," which lists entities and individuals that are subject to temporary denial orders issued by BIS. A temporary denial order temporarily denies (usually for 180 days to one year) all of a party's export privileges to prevent an imminent violation of the EAR. *See* Title 15, Code of Federal Regulations, Section 766.24. Under the ECRA and the EAR, it is a crime to take any action that is prohibited by a temporary denial order issued by BIS. *See* Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(J); Title 15, Code of Federal Regulations, Section 736.2(b)(4)(i). As of October 31, 2023, each of the four "partners" that was listed on Russian Company-4's website in August 2022 remains on BIS's Denied Persons List.

62.     On or about September 2, 2022, Kazakh Company-1 made a payment from a Kazakh bank account to KanRus's bank account for this export.

63.     On or about September 5, 2022, defendant CHISTYAKOV forwarded Robertson an email chain from individuals associated with Russian Company-4 and Kazakh Company-1 concerning the September 2, 2022 payment from the Kazakh bank account to KanRus's bank account and asked Robertson to confirm receipt of the wire.

64.     On or about September 7, 2022, Robertson and Buyanovsky ordered the avionics equipment for this export from U.S. companies.

65.     On or about September 14, 2022, Robertson emailed defendant CHISTYAKOV to say that the shipment would be ready soon and to confirm the shipping details.  Robertson also asked, "Why not ship to KZ."  Based on my training, experience, and familiarity with this investigation, I believe that "KZ" refers to Kazakhstan.

66.     On or about September 28, 2022, defendant CHISTYAKOV forwarded Robertson an email chain between himself and individuals associated with Kazakh Company-1 and Russian Company-4.  In one of the emails, an individual whose title was head of sales for Russian Company-4 told defendant CHISTYAKOV that the shipment would most likely need to be sent to a company in the UAE instead of Laotian Company-1.

67.     On or about October 3, 2022, Robertson emailed defendant CHISTYAKOV the invoice with instructions to update the recipient to UAE Company-3.

68.     On or about October 7, 2022, defendant CHISTYAKOV emailed Robertson an updated invoice with a "correction from [Russian Company-4]."  The corrected invoice listed a different company, UAE Company-2, as the recipient.

69.     On or about October 11, 2022, Robertson caused the shipper to file a false and misleading EEI that listed the ultimate consignee as UAE Company-2 and the ultimate destination as the UAE when, in fact, the avionics shipment was destined for Russian Company-4 in Russia.

70.     On or about October 11, 2022, Robertson caused the two KN-62A distance-measuring equipment unit installation kits and two KT-76C transponders and installation kits to be exported to UAE Company-2.  The KN-62A distance-measuring equipment unit installation kit, the KT-76C transponder, and the KT-76C installation kit were on the CCL, classified by BIS under ECCN 7A994, and required a license from the Commerce Department to be exported or reexported to Russia.

71.     On or about October 12, 2022, Robertson emailed the invoice and shipping label for this export to defendant CHISTYAKOV.

72.     According to business records provided by FedEx, on or about October 13, 2022, the IP address 77.50.243.190 accessed FedEx's website to track the progress of this shipment.  According to an IP address geolocation tool, the approximate location of IP address 77.50.243.190 is Moscow, Russia.  IP address 77.50.243.190 is the same IP address that tracked the April 2022 export to Russian Company-4 described in the preceding paragraphs.

73.     At no time did either Robertson, Buyanovsky, or defendant CHISTYAKOV obtain the required license from the Commerce Department to export or reexport the KN-62A distance-measuring equipment unit installation kits, KT-76C transponders, or KT-76C installation kits to Russia.

**December 14, 2022 Export to Russian Company-4 via the UAE**

74.     On or about October 25, 2022, defendant CHISTYAKOV emailed Robertson asking to order another KN-62A distance-measuring equipment unit for Russian Company-4.

75.     On or about October 31, 2022, defendant CHISTYAKOV emailed Robertson a draft invoice listing Kazakh Company-1 as the payor and UAE Company-2 as the recipient.  Later that day, Robertson emailed defendant CHISTYAKOV a stamped version of the invoice.

76.     On or about November 11, 2022, defendant CHISTYAKOV forwarded Robertson an email conversation between himself and individuals associated with Kazakh Company-1 and Russian Company-4 in which they requested that the payor party on the invoice be switched from Kazakh Company-1 to Kyrgyz Company-1.  Later that day, Robertson emailed defendant CHISTYAKOV a revised invoice.

77.     On or about November 15, 2022, defendant CHISTYAKOV forwarded Robertson an email chain from individuals associated with Kazakh Company-1 and Russian Company-4 stating that the payment had been sent.

78.     On or about November 16, 2022, Kyrgyz Company-1 made a payment from a Kyrgyz bank account to KanRus's bank account for this export.

79.     On or about November 16, 2022, Robertson ordered the avionics equipment for this export from a U.S. company.

80.     On or about December 14, 2022, Robertson caused the shipper to file a false and misleading EEI that listed the ultimate consignee as UAE Company-2 and the

ultimate destination as the UAE when, in fact, the avionics shipment was destined for Russian Company-4 in Russia.

81.     On or about December 14, 2022, Robertson caused the KN-62A distance-measuring equipment unit to be exported to UAE Company-2.  The KN-62A distance-measuring equipment unit was on the CCL, classified by BIS under ECCN 7A994, and required a license from the Commerce Department to be exported or reexported to Russia.

82.     On or about December 14, 2022, Robertson emailed the shipment's tracking number for this export to defendant CHISTYAKOV.

83.     According to business records provided by FedEx, between on or about December 15, 2022 and January 16, 2023, the IP address 77.50.243.190 accessed FedEx's website multiple times to track the progress of this shipment.  According to an IP address geolocation tool, the approximate location of IP address 77.50.243.190 is Moscow, Russia.  IP address 77.50.243.190 is the same IP address that tracked the April 2022 and October 2022 exports to Russian Company-4 described in the preceding paragraphs.

84.     At no time did either Robertson, Buyanovsky, or defendant CHISTYAKOV obtain the required license from the Commerce Department to export or reexport the KN-62A distance-measuring equipment unit to Russia.

Further, affiant sayeth not.

Brian D. Newbury
Special Agent, FBI

23

The foregoing subscribed and sworn to before me on this ___ day of December, 2023, in accordance with Federal Rule of Criminal Procedure 4.1.

After reviewing this Complaint, I find there is probable cause to believe that defendant OLEG CHISTYAKOV a.k.a. OLEGS ČISTJAKOVS, committed the offenses set forth above.

_____
HONORABLE ANGEL D. MITCHELL
United States Magistrate Judge

## PENALTIES

### Count 1, Conspiracy

- Punishable by a term of imprisonment of not more than five.  18 U.S.C. § 371.

- A term of supervised release of not more than three years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).

- A mandatory special assessment of $100.  18 U.S.C. § 3013(a)(2)(A).

### Counts 2-5, Smuggling

- Punishable by a term of imprisonment of not more than ten years.  18 U.S.C. § 554.

- A term of supervised release of not more than three years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).

- A mandatory special assessment of $100.  18 U.S.C. § 3013(a)(2)(A).