IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>　　　　　　**Plaintiff,**<br><br>　v.<br><br>**OLEG CHISTYAKOV**<br>　　**a.k.a. OLEGS ČISTJAKOVS,**<br><br>　　　　　　**Defendant.** | Case No. 23-20010-DDC-03 |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S REQUEST FOR MISCELLANEOUS MATTERS

Oleg Chistyakov submitted a document to the Court seeking several items in connection with his pending extradition from Latvia to Kansas. (Doc. 77). The Court directed the United States to submit a response to Defendant's Motion for Miscellaneous Relief (doc. 78), and then extended that deadline until July 12, 2024, upon the government's request. (Doc. 80).

As explained below, the request should be dismissed and denied without prejudice until Defendant has subjected himself to the Court's jurisdiction and appears in Kansas to face the charges in this case.

### BACKGROUND

On March 27, 2024, a grand jury returned a Second Superseding Indictment adding Defendant to this case and charging him with one count of conspiracy in violation of 18 U.S.C. § 371; two counts of violating the Export Control Reform Act in violation of 50 U.S.C. § 4819, 15 CFR § 764.2, and 18 U.S.C. § 2; four counts of smuggling in violation of 18 U.S.C. §§ 554 and 2; one count of conspiracy to commit international money laundering in violation of 18

1

U.S.C. § 1956(h); and two counts of international money laundering in violation of 18 U.S.C. §§ 1956(a)(2) and 2.  (Doc. 75).  This indictment superseded earlier charges brought against Defendant on December 14, 2023, in a Complaint (D. Kan. No. 23-MJ-9247-01-ADM).

The charges arose from Defendant's conspiring with others to circumvent U.S. export laws and regulations to smuggle U.S.-origin avionics equipment to end users in Russia, as well as Russian end users in other foreign countries by, among other actions, knowingly filing false export forms and failing to file required export forms with the U.S. government.  In these forms, the conspirators falsely reported the exports' value, end users, and end destinations.

On February 15, 2024, in accord with treaty provisions with Latvia, the United States formally requested the provisional arrest of Defendant by Latvian officials on the Complaint.  On March 19, 2024, Latvian officials arrested Defendant.  On or about May 3, 2024, in accord with treaty provisions with Latvia, the United States requested Defendant's extradition to the United States.  On or about June 6, 2024, a Latvian court ordered Defendant extradited to the United States.  Defendant appealed the order of extradition to the Supreme Court of Latvia, so he remains in Latvia while his appeal is pending.

On June 11, 2024, Defendant submitted a two-page document to the Court with the second page presumably an English translation of the first page.  (Doc. 77).  The Court construed the document as a Motion for Miscellaneous Relief and directed the United States to respond. (Doc. 78).  Defendant makes various requests "in order to be extradited to the United States." (Doc. 77 at 2).  Those requests include the discovery in the case, an attorney for consultation, life insurance due to risks with the airline travel, health care while in the United States, and release conditions.  *Id.*

## ARGUMENT

The fugitive disentitlement doctrine requires Defendant's motion to be dismissed. Currently, Defendant is exercising his right to appeal the order of extradition by the Latvian Court. As such, Defendant has chosen to not subject himself to the authority of this Court. As he is exercising his right to appeal the extradition in Latvia, Defendant "refuses" to submit to this Court's jurisdiction. Therefore, Defendant should not seek relief from this Court until he has appeared before this Court or submits to its jurisdiction. *See Pesin v. Rodriguez*, 244 F.3d 1250, 1253 (11th Cir. 2001) (applying fugitive disentitlement doctrine because "it would be inequitable to allow [the fugitive] to use the resources of the courts only if the outcome is a benefit to her").

A fugitive from justice has no right "to have his case adjudicated by the court before whom he refuses to appear." *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970). "This doctrine accounts for 'the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing [a] "fugitive" to use the resources of the courts only if the outcome is an aid to him,' and 'the need to avoid prejudice to the nonfugitive party.'" *United States v. Shalhoub*, 855 F.3d 1255, 1259 (11th Cir. 2017) (quoting *United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997)). As an equitable doctrine, the fugitive disentitlement doctrine reflects the principle that a fugitive "demonstrate[s] such disrespect for the legal process[ ] that he has no right to call upon the court to adjudicate his claim." *Ener v. Martin*, 987 F.3d 1328, 1331-32 (11th Cir. 2021).

Although currently detained in Latvia, Defendant should still be considered a fugitive under the fugitive disentitlement doctrine. A defendant can become a fugitive from justice in one jurisdiction even when imprisoned abroad. *United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984) (citing *Taylor v. United States*, 238 F.2d 259 (D.C. Cir. 1956)). "A fugitive is

someone who has been offered process and refuses it." *Shalhoub*, 855 F.3d at 1264. Moreover, a defendant is a fugitive from justice by "actively resist[ing] the extradition request throughout the proceedings." *Catino*, 735 F.2d at 722 (citing *United States v. Greene*, 154 F. 401 (5th Cir. 1907); *United States v. Estremera*, 531 F.2d 1103, 1108 (2d Cir. 1976)); *see also Barnette*, 129 F.3d at 1184 ("The defendant need not leave the jurisdiction, but—while legally outside the jurisdiction—may constructively flee by deciding not to return."); *United States v. Martirossian*, 917 F.3d 883, 890 (6th Cir. 2019) ("A defendant need not be present in and leave a jurisdiction to become a fugitive; the mere refusal to report for prosecution can constitute constructive flight."). Resisting extradition is grounds for a defendant to be considered a fugitive from the United States' criminal process. *Schuster v. United States*, 765 F.2d 1047, 1050 (11th Cir. 1985). One may be a fugitive even when a defendant has not "literally fle[d] the United States, since he was never in the United States. But he knew he was under indictment in this country, yet rather than come here to fight the validity of the government's charges, he fought tooth and nail . . . to prevent his being extradited from the United Kingdom to the United States." *In re Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014).

Defendant became a fugitive from justice before his March 2024 arrest by Latvian authorities. He knowingly maintains that fugitive status by currently resisting his extradition to the United States, by "constructively fleeing." Defendant is entitled under Latvian law to challenge the extradition and is exercising that right, but that choice denies him the right to seek relief in this Court at this time.

It has long been established that a fugitive from justice is not entitled to the adjudication of his claims by a court before whom he refuses to appear. *See Smith v. United States*, 94 U.S. 97 (1876); *Molinaro*, 396 U.S. at 366; *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239–40

4

(1993); *Degen v. United States*, 517 U.S. 820, 824 (1996).  The Tenth Circuit has recognized the fugitive disentitlement doctrine in the context of criminal matters, holding that fugitives from justice "may not use the judicial system while at the same time avoiding it." *Martin v. Mukasey*, 517 F.3d 1201, 1204-05 (10th Cir. 2008).  Although the doctrine "does not necessarily strip a case of its character as a justiciable controversy," *Gonzales v. Stover*, 575 F.2d 827, 828 (10th Cir. 1978), it does permit a court to dismiss a litigant's action based on his fugitive status.  *See Mukasey*, 517 F.3d 1201, 1204 (10th Cir. 2008).

Now that Defendant faces extradition following his arrest, he seeks to avail himself of the benefits of this Court while simultaneously resisting his extradition to Kansas.  Because Defendant has resisted, and continues to resist, his appearance in the District of Kansas, he is precluded from invoking the benefits of this Court's jurisdiction.

Once Defendant appears before this Court, then discovery will be provided, counsel may be appointed, and appropriate consideration under the Bail Reform Act regarding detention will be conducted.  The options to address Defendant's health concerns in the United States will depend upon whether he is detained or released on conditions.  Moreover, Defendant's concern of traveling to the United States as part of the extradition due to long-standing health issues appears overblown considering that, according to his passport that the government photographed during a judicially-authorized search, Defendant travelled to Thailand in January and February of 2023 and to Cambodia in November and December of 2023.  Regardless of the veracity of Defendant's claims, if he has health concerns implicated by these criminal proceedings, those can be addressed by this Court only *after* his extradition to the United States and arraignment.

//

//

## **CONCLUSION**

Like the Court in *Barnette*, this Court should "decline to participate" and dismiss Defendant's motion.

Respectfully Submitted,

KATE E. BRUBACHER
UNITED STATES ATTORNEY

By: */s/ Ryan J. Huschka*
Ryan J. Huschka
Assistant United States Attorney
Email: Ryan.Huschka@usdoj.gov
Ks. S. Ct. No. 23840

By: */s/ Scott C. Rask*
Scott C. Rask
Email: Scott.Rask@usdoj.gov
Ks. S. Ct. No. 15643

District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas  66101
Ph: (913) 551-6730
Fax: (913) 551-6541

By: */s/ Adam P. Barry*
Adam P. Barry
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Ph: (202) 233-0788
Fax: (202) 532-4251
Email: adam.barry@usdoj.gov
Cal. Bar No. 294449

## Certificate of Service

I certify that on July 12, 2024, I electronically filed this Response with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to those attorneys who have entered their appearance in the matter, and that a true and correct copy was mailed to Defendant's address on correspondence received from Defendant as well as by copy to the email address provided by Defendant.

/s/ *Scott C. Rask*
SCOTT C. RASK
Assistant United States Attorney